UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

HAMEED R. GIBSON,

               Plaintiff,

v.

ZAKRIA HAGGAGI et al.,

               Defendants.
_____/

Case No. 1:24-cv-891

Honorable Jane M. Beckering

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants S. Cline and R. Rurka. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendant Zakria Haggagi: Plaintiff's Eighth Amendment claim premised upon Defendant Haggagi labeling Plaintiff as a "chomo lover" in front of other prisoners, and all Fourteenth Amendment claims. Plaintiff's First

Amendment retaliation claims, Eighth Amendment claims for unwanted sexual touching, and supplemental state-law claims against Defendant Haggagi remain in the case

## Discussion

I.      **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. The events about which he complains, however, occurred at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. Plaintiff sues the following LCF staff: Corrections Officer Haggagi, Acting Deputy Warden Cline, and Deputy Warden Rurka.

Plaintiff alleges that, on December 1, 2022, Defendant Haggagi conducted a shakedown of Plaintiff's "cube" and found prisoner-made alcohol. (ECF No. 1, PageID.4.) When Defendant Haggagi asked if Plaintiff knew who the alcohol belonged to, Plaintiff responded, "No," and that "he was not a snitch." (*Id.*) Defendant Haggagi then replied, "If you don't tell me what I want to know, I am putting this spud on you." (*Id.*) Defendant Haggagi issued Plaintiff a misconduct complaint for the contraband. (*Id.*)

At the hearing regarding Plaintiff's misconduct charge, Plaintiff told the hearing officer that Defendant Haggagi had retaliated against Plaintiff for refusing to tell Defendant Haggagi who possessed the alcohol and indicated that he would be filing a grievance against Defendant Haggagi. (*Id.*) After Plaintiff was found not guilty, Defendant Haggagi told Plaintiff, "I'll get your ass, I got something for you just wait." (*Id.*)

On January 13, 2023, Defendant Haggagi conducted shakedown of Plaintiff's cubicle and "trashed [Plaintiff's] area of control," including breaking Plaintiff's television and taking items of Plaintiff's personal property (*Id.*) When Plaintiff reported Defendant Haggagi's actions to non-

2

party Sergeant Hudson, Sergeant Hudson told Plaintiff to write a grievance. (*Id.*) Plaintiff made a written complaint on January 15, 2023, and filed a grievance on January 16, 2023. (*Id.*)

On January 26, 2023, Plaintiff assisted a prisoner with learning disabilities in filing a grievance on Defendant Haggagi. (*Id.*) Defendant Haggagi immediately found out. (*Id.*) On February 2, 2023, Defendant Haggagi conducted a shakedown of Plaintiff's person, calling Plaintiff a "[f]****** chomo[1] lover" in front of other prisoners. (*Id.*, PageID.4 (asterisks added).)

On February 6, 2023, Plaintiff told Defendant Cline that he was having problems with Defendant Haggagi, that Defendant Haggagi was retaliating against Plaintiff, and that Plaintiff did not feel safe. (*Id.*) Plaintiff asked whether he could be moved away from Defendant Haggagi, but Defendant Cline told Plaintiff that he could not. (*Id.*)

Nearly five months later, on July 4, 2023, Defendant Haggagi conducted a shakedown of Plaintiff's "area." (*Id.*) Plaintiff told non-party Sergeant Garrett that he was afraid of Defendant Haggagi. (*Id.*) Sergeant Garrett instructed Plaintiff to file a grievance. (*Id.*)

Plaintiff submitted a grievance on July 7, 2024, against Defendant Haggagi alleging retaliation. (*Id.*) That same day, Plaintiff also spoke with Defendant Rurka about his fear of Defendant Haggagi and request to be moved. (*Id.*) Defendant Rurka told Plaintiff that "he would look into it" but took no further action. (*Id.*)

On August 8, 2023, Defendant Haggagi entered Plaintiff's cube and "totally wrecked [Plaintiff's] living area." (*Id.*, PageID.5.) Defendant Haggagi then called Plaintiff to the desk and told Plaintiff that he found Plaintiff's contraband. (*Id.*) When Plaintiff denied possession of the contraband, Defendant Haggagi told Plaintiff, "[A]nything I find in your cube, I am putting on

---

[1] "Chomo" is prison slang for child molester.

3

you." (*Id.*) Plaintiff responded by telling Defendant Haggagi that he would file a grievance and lawsuit against him. (*Id.*)

On September 13, 2023, Defendant Haggagi entered Plaintiff's cube, told everyone but Plaintiff to leave, and walked up to Plaintiff saying, "[O]h, since you want to help guys write grievances on me, I will show you what happens to those kinds of prisoners." (*Id.*) Defendant Haggagi proceeded to "shake [Plaintiff] down," touching the outside of Plaintiff's clothing, including the area of Plaintiff' penis. (*Id.*) When Plaintiff objected, Defendant Haggagi touched Plaintiff's penis again outside of Plaintiff's clothing and then reached into Plaintiff's pants and "squeezed" Plaintiff's penis. (*Id.*) Plaintiff began to have a panic attack, at which time Defendant Haggagi called for backup. (*Id.*) Plaintiff was strip searched and found to not be in possession of contraband. (*Id.*) Plaintiff later told Defendant Rurka what had happened. (*Id.*) Defendant Rurka told Plaintiff that Plaintiff would be placed in segregation "until they figured out what was going on." (*Id.*)

Based upon the facts alleged, Plaintiff seeks monetary relief. (*Id.*, PageID.6.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

4

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

### A.     Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### 1.     First Amendment Retaliation

Plaintiff claims that Defendant Haggagi's actions were the result of unlawful retaliation, in violation of Plaintff's First Amendment rights. (ECF No. 1, PageID.5.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Here, Plaintiff's complaint contains several alleged instances of protected conduct, including Plaintiff's refusal to tell Defendant Haggagi the name of the prisoner who possessed the alcohol, *see Wooley v. Maynard*, 430 U.S. 705, 714 (1977) ("[T]he right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all."), Plaintiff's verbal complaints and grievances, *see Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018) (holding that an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral), and, possibly, Plaintiff's efforts to assist a prisoner with a learning disability in filing a grievance, *see Herron v. Harrison*, 203 F.3d 410, 415–17 (6th Cir. 2000). Taking these allegations and Plaintiff's allegations regarding the string of behavior and statements of Defendant Haggagi that followed as true, the Court finds that, at this stage of the proceedings, Plaintiff has alleged sufficient facts to state a claim for First Amendment retaliation against Defendant Haggagi.

### 2.    Fourteenth Amendment Due Process Claims

Plaintiff alleges that, Defendant Haggagi issued Plaintiff a false misconduct complaint and deprived Plaintiff of personal property in the course of the January 13, 2023, shakedown. Plaintiff also alleges that Defendant Rurka placed Plaintiff in segregation pending his investigation of Plaintiff's September 13, 2023, interaction with Defendant Haggagi. Based on those allegations, the Court has liberally construed Plaintiff's complaint as also raising claims for violation of Plaintiff's Fourteenth Amendment right to procedural due process.

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient. . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

### a.        False Misconduct Complaint and Placement in Segregation

Plaintiff alleges that Defendant Haggagi issued Plaintiff a false misconduct complaint, for which Plaintiff was found not guilty. (ECF No. 1, PageID.4.) He also claims that Defendant Rurka placed him in segregation pending an investigation. (*Id.*, PageID.5.) As explained below, Plaintiff's allegations do not give rise to a viable Fourteenth Amendment claim.

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

First, as to Plaintiff's claim that he was placed in segregation on or around September 13, 2023, the Supreme Court has held that placement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, placement in segregation is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant).

Here, Plaintiff has not provided the Court with any facts that would plausibly suggest that Plaintiff's placement in segregation pending an investigation rose to the level of an atypical and significant hardship under *Sandin*. Accordingly, Plaintiff fails to state a viable Fourteenth Amendment due process claim against Defendant Rurka.

As to Plaintiff's allegations regarding the allegedly false misconduct complaint, Plaintiff's complaint clearly indicates that Plaintiff was found not guilty. There is "no constitutional right to be free from false accusations of misconduct." *Jackson v. Hamlin*, 61 F. App'x 131, 132 (6th Cir. 2003). "Due process of law requires only that the person have the opportunity to convince an unbiased decision maker that he has been wrongly or falsely accused or that the evidence against him is false." *Onumonu v. Mich. Dep't of Corr.*, No. 1:21-cv-33, 2021 WL 972809, at *3 (W.D.

8

Mich. Mar. 16, 2021); *see also Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *2 (6th

Cir. Mar. 31, 2017) (agreeing that an inmate's misconduct proceedings did not implicate a

protected liberty interest because he was found not guilty); *Barlow v. Dominguez*, No. 98-2414,

1999 WL 1045174, at *1 (6th Cir. Nov. 9, 1999) (noting that the inmate's "due process rights were

protected when, at an administrative hearing concerning the ticket, [the inmate] was found not

guilty and the ticket was dismissed"). Because Plaintiff's allegations show that he had such an

opportunity, and that ultimately, he was found not guilty, any intended procedural due process

claims based upon those misconduct charges will be dismissed.

### b.     Deprivation of Property

Plaintiff alleges that, while conducting a shakedown, Defendant Haggagi broke Plaintiff's

television and took items of Plaintiff's personal property. (ECCF No. 1, PageID.4.) Any

Fourteenth Amendment claims based upon the deprivation of these items of personal property,

however, are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part*

*by Daniels v. Williams*, 474 U.S. 327 (1986).

Under *Parratt*, a person deprived of property by a "random and unauthorized act of a state

employee," *id.* at 541, including "the unauthorized failure of agents of the State to follow

established state procedure," *id.* at 543, have "not alleged a violation of the Due Process Clause of

the Fourteenth Amendment," *id.*, where "[t]he [s]tate provides a remedy to persons who believe

they have suffered a tortious loss at the hands of the [s]tate," *id.*, and the state "remedies provided

could have fully compensated the [plaintiff] for the . . . loss he suffered . . . they [can be] sufficient

to satisfy the requirements of due process," *id.* at 544. If an adequate post-deprivation remedy

exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine

applies to both negligent and intentional deprivations of property, as long as the deprivation was

not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S 517, 530–36 (1984).

9

Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate and, indeed, Plaintiff has state post-deprivation remedies available to him. For example, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff fails to allege any reasons why a state-court action would not afford him complete relief for the deprivations, either negligent or intentional, of his personal property. Accordingly, Plaintiff fails to state a Fourteenth Amendment due process claim regarding the deprivation of his property.

### 3.    Eighth Amendment Claims

Finally, Plaintiff alleges that Defendant Haggagi called Plaintiff a "[f]****** chomo lover" in front of other prisoners. (ECF No. 1, PageID.4 (asterisks added).) He also claims that Defendant Haggagi touched and squeezed Plaintiff's penis. (ECF No. 1, PageID.5.) The Court has construed Plaintiff's allegations to raise claims for violation of Plaintiff's Eighth Amendment rights.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam)

(quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (citations omitted).

### a.      Comment in Front of Other Prisoners

With respect to Plaintiff's claim that Defendant Haggagi called Plaintiff a "chomo lover" in front of other prisoners, inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson*, 468 U.S. at 526–27. In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833. To establish a violation of this right, Plaintiff must show that Defendants were deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880–81 (6th Cir. 1988).

Labeling an inmate as set forth above may constitute deliberate indifference to the inmate's safety. *See, e.g.*, *Comstock v. McCrary*, 273 F.3d 693, 699, n.2 (6th Cir. 2001) (acknowledging

that being labeled a snitch could make the inmate a target for prison attacks); *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001); *see also Odom v. McKenzie*, No. 12-CV-79-HRW, 2012 WL 6214367, at *3 (E.D. Ky. Dec. 13, 2012) (citations omitted). However, in at least one published opinion, the Sixth Circuit has held that to state a claim for deliberate indifference under the Eighth Amendment in such a context, a plaintiff must allege, and ultimately establish, that he or she suffered physical harm as a result of being labeled. *See Thompson v. Mich. Dep't of Corr.*, 25 F. App'x 357, 359 (6th Cir. 2002) (affirming district court's dismissal where the plaintiff's claim that he was endangered by being labeled a snitch was unsupported by any allegation of harm); *Yaklich*, 148 F.3d at 600–01 (concluding that the plaintiff failed to state an Eighth Amendment claim based upon inmate threats where he alleged no physical injury); *see also White v. Trayser*, No. 10-cv-11397, 2011 WL 1135552 (E.D. Mich. Mar. 25, 2011) (holding that the plaintiff failed to state an Eighth Amendment claim where he alleged that defendant endangered his life by thanking him for information about illegal contraband in the presence of other inmates but failed to allege that he suffered any physical injury).

That said, a prisoner ordinarily does not need to prove that he has been the victim of an actual attack to bring a personal safety claim; instead, he must at least establish that he reasonably fears such an attack. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that a plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety"); *see also Gresham v. Walczak*, No. 1:20-cv-310, 2020 WL 7872192, at *2 (W.D. Mich. Nov. 30, 2021) (holding that an officer's accusation that a prisoner was a snitch, coupled with a threat of physical harm from a prisoner, was sufficient to state an Eighth Amendment claim). Here, however, Plaintiff fails to allege that he was ever in any danger of being assaulted as a result of Defendant

12

Haggagi's comment, and nothing in the complaint permits the Court to infer that Plaintiff reasonably fears such an attack. *See Farmer*, 511 U.S. at 834; *Thompson*, 29 F.3d at 242–43. Plaintiff's allegations are simply too speculative for the Court to conclude that he has set forth plausible Eighth Amendment failure-to-protect claims. Accordingly, such claims will be dismissed.

### b.        Unwanted Sexual Touching

Turning to Plaintiff's claims that Defendant Haggagi touched and squeezed Plaintiff's penis, "[f]ederal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment. . . This is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citing *Farmer*, 511 U.S. at 848–49 (discussing inmate abuse); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (same); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (discussing abuse by guards).

Here, Plaintiff alleges that Defendant Haggagi touched Plaintiff's penis more than once outside of Plaintiff's clothes, made a comment which Plaintiff interpreted as referencing the size of Plaintiff's penis, and then put his hand down Plaintiff's pants and squeezed Plaintiff's penis. Taking these allegations as true as is required at this stage of the litigation, the Court will allow Plaintiff to proceed with his Eighth Amendment claim against Defendant Haggagi.

### 4.        Remaining Claims Against Defendants Cline and Rurka

Plaintiff alleges that he complained to Defendants Cline and Rurka about Defendant Haggagi's actions, but that Defendants Cline and Rurka failed to take action against Defendant Haggagi. Government officials, such as Defendants Cline and Rurka, may not be held liable under § 1983 for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active

13

unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v.*

*Barber*, 310 F.3d 889, 899 (6th Cir. 2002).

The acts of one's subordinates are not enough, nor can supervisory liability be based upon

the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368

F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a

defendant denied an administrative grievance or failed to act based upon information contained in

a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead

that each government-official defendant, through the official's own individual actions, has violated

the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit has repeatedly summarized the minimum required to constitute active

conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending
> individual is not actionable unless the supervisor either encouraged the specific
> incident of misconduct or in some other way directly participated in it." Shehee,
> 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have
> interpreted this standard to mean that "at a minimum," the plaintiff must show that
> the defendant "at least implicitly authorized, approved, or knowingly acquiesced in
> the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300,

and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v.*

*Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976),

and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d

1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff alleges only that Defendants Cline and Rurka failed to act. He does not

allege any facts suggesting that Defendants Cline and Rurka actively encouraged or condoned any

constitutional violation by Defendant Haggagi, or authorized, approved, or knowingly acquiesced

in any alleged misconduct that could be said to have caused a violation of Plaintiff's constitutional

14

rights. Accordingly, Plaintiff cannot maintain a claim against Defendants Cline and Rurka premised upon their alleged supervisory responsibilities over Defendant Haggagi or their failure to act.

### B.  State-Law Claims

In addition to his constitutional claims, Plaintiff alleges that Defendants were grossly negligent and violated MDOC policy. (ECF No. 1, PageID.5.) Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for violations of state law or MDOC policy. *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995). Therefore, the Court will construe Plaintiff's allegations as an attempt to raise supplemental state-law claims.

In determining whether to retain supplemental jurisdiction over state-law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state-law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state-law issues." (internal quotation marks omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the Court will allow Plaintiff to proceed with his supplemental state-law claims against Defendant Haggagi. However, because the Court dismisses Plaintiff's federal claims against Defendants Cline and Rurka, the Court will decline to exercise supplemental jurisdiction

over Plaintiff's state-law claims against Defendants Cline and Rurka. Such claims will be dismissed without prejudice to Plaintiff's ability to bring those claims in state court.

### Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that Plaintiff's federal claims against Defendants Cline and Rurka will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will dismiss Plaintiff's state-law claims against Defendants Cline and Rurka without prejudice to Plaintiff's ability to raise those claims in the state courts. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendant Haggagi: Plaintiff's Eighth Amendment claim premised upon Defendant Haggagi labeling Plaintiff as a "chomo lover" in front of other prisoners, and all Fourteenth Amendment claims. Plaintiff's First Amendment retaliation claims, Eighth Amendment claims for unwanted sexual touching, and supplemental state-law claims against Defendant Haggagi remain in the case.

An Order consistent with this Opinion will be entered.


Dated:     October 10, 2024          /s/ Jane M. Beckering
                                      Jane M. Beckering
                                      United States District Judge